representing the plaintiffs in these cases, but I'm here really not only on behalf of the plaintiffs, but on behalf of the Florida Supreme Court. The district judge threw out all these cases on summary judgment because the district judge believed that Florida is the only jurisdiction in the United States of America that has rejected class action polling. That's incorrect. There are two Florida Supreme Court holdings, Lance and Engle, 1984 and 2006, that told the statute of limitations for absent class members. Neither of those decisions used the word toll. That is true. But in 2016, the Florida Supreme Court, in a case called Ciccone, did use the word toll. They said what we did in Engle was equitable tolling. The Florida courts of appeals, the intermediate courts of appeals, are unanimous in embracing class action tolling. We cite a half dozen or more of those cases in our brief. Against two Florida Supreme Court holdings and a half dozen or more intermediate court holdings. Counsel, it's one thing to have the court later label something, but when you look at those two cases, they're much, much different. You know the differences better than I do. But it does seem to me that on their facts, they're not applicable to what's occurring here. Doesn't mean it couldn't be extended to what's happening here. But their class actions preceded the recertifications, and at some point, they were both decertified. And so the equities of that situation were quite substantial. And it does seem to me that equitable tolling is not the best label for that, but Florida can call it whatever they want to. You were asking clearly for equitable tolling. So I think you may be overstating a bit, which is what your role is, perhaps, at times, what Florida has actually held. Are you saying that these numerous intermediate court opinions in Florida, which I have not read, are very much, on fact, similar to what we have here of class member or putative class members, such as your clients were here, who did receive the benefit of the pending class action? Yes and yes. And they were different than the two Supreme Court cases, which I find quite distinguishable from what we're having here, maybe errantly. I have two responses. All right. The first response, going directly to your question, is there is one intermediate court of appeals, GAFF, we cited in the brief, G-A-F-F, where it was an opt-out. It was an Engle plaintiff, but they opted out and filed their own lawsuit before the Engle class action was decertified. And the Florida intermediate court of appeals says, We assume the filing of the Engle class action complaint told the running of the statute of limitations as to all potential members of the class, including Ms. GAFF. Then the Court goes on to say the limitations period began to run again when Mr. GAFF filed his statement opting out of the class. And because the period started running again on the opt-out, this lawsuit in this case was untimely. So the lower courts have extended it to opt-outs, not just decertification. But more importantly, I think in my — from my perspective, of the 35 jurisdictions in this country that have embraced class action tolling, zero have made a distinction between classes that are decertified and classes that are never certified. And the reason is this. Class action tolling won't work if you make that distinction, because at the time absent class members have to make a decision about whether or not to file a protective lawsuit, they don't know what the future holds for the putative class action. They don't know if it's going to be rejected certification or it's going to be granted certification and decertified. They have no idea. That's in the future. So to protect themselves, they'd have to file a protective lawsuit every single time if you made that distinction. That's why no jurisdiction makes that distinction, and that's why it would be, I think, illogical to think that Florida would make that distinction. And in light of GAFF, which is something that Federal courts should defer to if there's no Florida Supreme Court holding directly on point, we think the case is even stronger that our facts do fit with Florida's doctrine of equitable tolling. But more importantly, perhaps, than all that, is in addition to GAFF, the other intermediate courts of appeals, the two Florida Supreme Court holdings, there are zero Florida cases rejecting class action tolling. Zero. All there is is a statute from 1974, and I do not think a statute from 1974 can trump two Florida Supreme Court holdings since then and a slew of Florida appellate courts since then. Moreover, the statute can be reconciled with all of these cases, and the way the statute can be reconciled with all of these cases is by this doctrine of equitable tolling. The Florida courts have understood equitable tolling to exist outside of statutory tolling for decades. And I would just draw your attention to one of the primary cases that Pershing relies on to understand why equitable tolling and statutory tolling are two different animals in Florida. One of the cases they rely on is called Morsani, Major League Baseball v. Morsani. It's a case about equitable estoppel. But there's dicta in there that they rely on about tolling and the exclusivity of the Florida statute. This is what Morsani says. Morsani says there's a lot of doctrines that affect the statute of limitations. That case is about estoppel, but they list four others, four other doctrines that, quote, may operate to deflect the statute of limitations. Number one, accrual. When does the cause of action accrue? Number two, tolling. Number three, equitable tolling. Number four, waiver. They see tolling and equitable tolling as two different animals. They drop a footnote to each of those things. Footnote 10 is the footnote for tolling. What do they cite there? The statute. They say statutory bases for tolling of the statute of limitations are set forth in 95.051. Footnote 11 is for equitable tolling. What's that? That's the Supreme Court, the Board of Supreme Court's case in Metchoulis. Equitable tolling, which involves no misconduct on the part of the defendant, may delay the statute of limitations period based on the plaintiff's blameless ignorance and lack of prejudice to the defendant. See Metchoulis. They've always seen equitable tolling as different from tolling, which is why they do not cite the statute in Engle or Lance or Metchoulis or Ciccone. It's a different world of equitable tolling compared to statutory tolling. So, and this is just not my theory. We cite the Florida Bar Journal on page 32 of our brief. This is how practitioners in Florida understand things to operate. You've got to worry about statutory tolling and equitable tolling if you're going to practice law in Florida. You can also look at the Florida Intermediate Courts of Appeals. They merrily apply the equitable tolling doctrine.  The Intermediate Court of Appeals in Florida said we don't believe Metchoulis and equitable tolling. We're going to limit it to the administrative proceedings only. We don't think there's a general doctrine of equitable tolling. They have one case. I asked my research assistant before I came here today to look at all Florida Intermediate Court of Appeals and what they've done since Metchoulis in 1988 on equitable tolling. And there were 24 Intermediate Court of Appeals cases on equitable tolling. One of them rejected equitable tolling. Twenty-three merrily applied it. The Florida lower courts are applying it. Florida practitioners understand it. And the Florida Supreme Court said it. Equitable tolling is different from tolling. Lastly, whatever difficulties you think we have reconciling Florida precedent with this 1974 statute, they have more difficulties with their interpretation of Lance and Engle. They say Lance and Engle are not about tolling. They're about savings. It's a savings holding in those cases. Well, there's several problems with that. Number one, they concede at page 33 of their brief that Florida has no savings statute. They used to have one until 1980, then they repealed it. So it doesn't help them get around Florida statutory law by saying it's savings. They have no savings statute in Florida. They don't allow clauses of action to be revived once they've expired. Number two, unlike us with the Ciccone case in 2016, they don't have a Florida Supreme Court case later calling what they did savings. We have that. They don't. Third, they don't have a theory of equitable savings that distinguishes equitable savings from statutory savings. We do. We have the Supreme Court in Morsani saying that. So for all these reasons, I think what the district judge did here was wrong. Florida Supreme Court gets the final say in what Florida law means. And they've said it twice, that it means equitable tolling for class actions. And I think that's all you need to know in order to reverse the district court. We have a lot of other arguments in the brief, some about Erie. If you don't like Florida law, there's always federal law. We have some other tolling arguments as well based on a stay the district court entered while an appeal was pending of this court. But I really think this case is fairly open and closed on the class action tolling under the Florida Supreme Court's holdings. So if there's no further questions about those things, I feel comfortable waiting for rebuttal. Can I ask you one question? Sure. American Pipe. Do you have a case that would apply American Pipe tolling to a state statute of limitations? And let me give you my premise. So I know the Supreme Court has applied it three times. Obviously, there's American Pipe, which is the Clayton Act. They've applied it to FELA. They've applied it to Title VII. So all three of those are obviously Federal statutes that provide the limitations, period. I assume there's a lower court of appeals or Federal district court somewhere in the United States that's applied American Pipe to a state statute of limitations? Yes. So there's a circuit split on whether American Pipe or State law governs tolling of State statutes of limitations. The one circuit that is on our side is the Eighth Circuit. And we cite that case in our brief. And I have it here. I can grab it. But it's basically a three- or four-to-one split on whether Federal law of American Pipe governs tolling of class actions that are based on State law and State statutes of limitations. And what would be the theory that Federal law would toll a State statute of limitations? Well, I mean, first of all, it happens all the time. 1367d says if you guys dismiss a State law action on supplemental jurisdiction, the statute of limitations is tolled for 30 more days. Hannah v. Plumer, if you can stop the statute of limitations depending on whether you serve someone at their home or in person, the Supreme Court said we follow Federal law on that, not State law on the State statute of limitations. It happens all the time. But the theory is this. The theory is the United States Supreme Court in Byrd. Byrd says there's three factors that we have to do for the Erie analysis when it's Federal common law versus State law. The three factors are what's the State interest, what's the Federal interest, and is it outcome determinative. And what Byrd said was when you have very little State interest and you have strong Federal interest, you apply Federal law even when it could be outcome determinative. And that's the reasoning of the Eighth Circuit that applied American pipe over State law there. And, frankly, this Court, in my view, gets an A-plus for its Erie analysis. In the case that we cite in the briefs, the Vought case, Judge Barksdale gets an A-plus. She does the Byrd analysis. She concludes that Texas's anti-cross-jurisdictional tolling law trumps over American pipe, but the analysis is perfect. She says what's Texas's interest in its rule, what's the Federal interest in American pipe, very high, because we don't want people filing all these unnecessary protective lawsuits, and then how outcome determinative. So she does all three factors perfectly. The only difference between our case and that case is Florida has no interest in an anti-class-action tolling rule because no one in Florida has ever said one word against class-action tolling. All the courts are on our side. They can't find a single legislator in 40 years that has ever said anything bad about class-action tolling. So there's zero State interest under the Byrd analysis. And if you have a balancing test and one side is zero, it's very hard for State law to win under that test. And so that's why we think, even if you want to say that Florida law does not recognize anti-class-action tolling, we think you end up in a position where you have to apply Federal law under those circumstances. And the case that leads the way is the Fifth Circuit's case in Vaught. Counsel, I don't want to create any awkwardness. My first name is Leslie, so I hear this all the time. Risa Boxdale is actually a guy. Oh, is that right? I'm sorry. I apologize. Quite all right. Lesson learned. Anything else, Andrew? Thank you, counsel. Thank you. May it please the Court. I heard what I just think is a remarkable statement in my colleague's argument. All there is is a statute on my side. We probably all heard that sort of startling, but he's got some arguments that follow. Understood. But I want to start there. All there is is a statute, and the statute is clear on its face. The statute says that the list of tolling events is exclusive, and the argument that there's a distinction between statutory tolling and equitable tolling is just plain wrong under Florida law. Counsel, I must say the starting point is it's not a new category like whatever that is, 10 or 11, of somewhat related nature. It's trying to move it into an entirely new regime, equity, and not straightforward application of whatever the law might be, and equity is an exception. The preceding case that you're probably sitting here for has a somewhat similar issue on the statute of limitation, though not exactly the same as what we're dealing with here by any means. So what about these cases that he both cited in his brief and talked about here today, the concept of treating equitable tolling as just a different category altogether? Your Honor, if you look at the cases they cited, the vast majority of them, six or seven of them, are what they call Engle progeny cases that follow from Engle, and all in the world those cases do in the background section of the case is recite what happened in Engle, that there was an interruption of the statute of limitations in Engle.  They apply other issues that arise out of the Engle progeny cases. So the vast majority of the cases they cite don't even address this issue at all. That leaves GAF. GAF is a case that assumed, in its own language, assumed that Florida would apply American pipe tolling and then said on the facts of this case it's irrelevant because even with American pipe tolling these claims are still late. The GAF case very carefully did not hold. It assumed and then said even with that assumption the plaintiffs failed. The other cases they cite, there's a case called Lattman, which is a case that involved tolling of a contractual limitations period, which obviously didn't trigger anything to do with the statute that prevents tolling. And then the Marchullis case that they cite told an administrative time period to appeal from a termination by a public employee. It had nothing to do with a statute. Now, the cases that we cite, the HCA Hillman case, is directly on point. That case dealt with a claim for equitable tolling of a statute of limitations because in that case the plaintiff had filed the case in federal court thinking there was diversity of citizenship. The case pended in federal court for some time. It was later dismissed for lack of diversity, was refiled in state court, and the plaintiff said equitable tolling, equitable tolling, not statutory tolling, and the court said you don't get tolling because under the statute there is no such thing as equitable tolling. So if you look at the universe of the cases they cite, they don't have a case that is on point here. And Lance and Engle, as Judge Southwick has already pointed out, are different cases. Whatever it is that Lance and Engle do, Lance and Engle do not toll a statute of limitations. Under the cases that both sides have cited, tolling does one of two things. It either suspends the limitation period so that once the tolling event happens, limitation stops running and once the tolling event goes away, it starts running again. Or alternatively, a tolling of a limitation says once the tolling event happens and when it ends, we're going to start all over again with the new statute of limitations. Engle and Lance do neither of those. Engle and Lance don't even talk about what's left of the statute of limitations. They simply impose what we call in our brief a savings period. You could also call it a grace period, but they're not tied to the statute of limitations. In Lance, it was just you can refile if you do it within a reasonable time period. In Engle, it was a one-year period, but that was completely divorced from the underlying statute of limitations. Now, why in Lance and Engle did the court do those things? And the plaintiffs actually, the appellants actually give us the answer on page 21 of their brief where they make the point that Engle and Lance are very different cases because it's not just that they were decertified after certification, but those cases in both situations were tried to verdict. So a class is certified. People are in the class. They obviously make a decision not to opt out because they've got a certified class and they don't want to pursue their own case. The cases are tried to verdict. And, in fact, in Engle, even though it's decertified for phase 3 once you get to appeal, in Engle those people are going to get to still rely in any subsequent case they file on res judicata on the findings from phase 1 and phase 2. So Engle is a completely extraordinary circumstance, but, again, divorced from traditional tolling principles because they don't toll the statute of limitations. They create a grace period. I find it really ironic that they chastise Judge Godbee for not having dealt more directly with Lance and Engle, but in the district court they didn't even raise Lance and Engle. Their briefing in the district court doesn't mention Lance and Engle for a very good reason. Nobody thinks, nobody thought that Lance and Engle are American pipe class action tolling cases, and they are not. We cite a number of federal cases that go our way on this, and, in fact, there's a second circuit has addressed this in the Becknell case, and they said this is so clear under the Florida statute. We don't need to certify this to the Florida Supreme Court for a decision. It's clear. The statute is clear, and whatever Lance and Engle do, they are not American pipe class action tolling cases. They're simply not. Now, with respect to the Erie question, the Erie question is answered. Let me get into that. I wasn't sure you were quite finished with the other. Were we to hold in the way that you were urging us to hold, what law is there in immediate court of Florida, I guess? What number of cases would we be overruling, pardon the wrong word, would we be inconsistent with? None. None, Your Honor. Again, the ---- You've made all these distinctions. I didn't know if you would give us at least one that I heard from the other side. I know you said GAF doesn't actually make such a holding. Is that the closest to an inconsistent decision from a court of appeals? From a Florida court of appeals, I think GAF is the closest you would even get to any kind of inconsistency. But, again, that's not a holding. Now, to be completely candid with the court, there is a federal case in Florida, Sacred Heart, which you would be inconsistent with. On the other hand, we've cited six or eight cases, federal cases, interpreting Florida law on our side that you would be completely consistent with. But the only Florida case that you would even arguably getting near any inconsistency is GAF. The others that they say they go their way are not statutory cases. They're not statutes of limitations. Marchulis is an administrative case. And Lattman, I believe the name of the case is, is a contractual limitation, period. With respect to the Erie question, they cite this Eighth Circuit case. It's Adams Public Schools. It was an asbestos in public schools case as going their way on the Erie question. It doesn't. In Adams Public School, while that case was pending, the state legislature passed a revival statute that said, you know what? We're going to revive statutes of limitations that are already expired for asbestos in public buildings cases. So the discussion, and there was a discussion of American Pipe in there, it wasn't what drove the decision because this revival statute had been enacted. Vought, this Court's opinion in Vought, answers this question. Vought says that under a proper Erie analysis, the question is for state law in these circumstances. And you cannot distinguish Vought based on the differences between Texas and Florida law because they like to say that Vought relied on the Amarillo Court of Appeals case in Bell and said Texas has a strong interest because there was this incredibly in-depth analysis in the Bell case from Amarillo. There's not. The Bell case in Amarillo has a one-sentence discussion of the American Pipe issue. Very good sentence. It is a good sentence. But what Vought ends up saying is the reason we're going to favor the Texas policy is because tolling periods are integral to statutes of limitations. That's what drove the Vought decision. That's true in Texas, and it is even more true in Florida because in Texas you have to be able to toll periods. But you do allow, though, that Vought leaves open that this is a State-by-State or even limitation-by-limitation consideration, and you look at the interest of the State in that particular thing. So it's not — it's not — Vought isn't a holding that requires us to rule in your favor. It requires us to go through the analysis of Vought. Absolutely. I agree that what Vought says and what Berg says is you — part of the analysis is to balance the Federal interest against the State interest. And I can see that it is theoretically possible that a State could have different interests from another State on this point. But what Vought identified as the critical State interest is whether or not tolling is integral to the statutory — the statute of limitations scheme. The court in Vought found that it was in Texas, and you cannot possibly find that it's not in Florida. It's even a stronger argument in Florida because in Florida the rule that says you can't have tolling here is not a judge-made rule out of a case law. It's from the face of the statute, which says that you can have no tolling except for the nine reasons that are listed in the statute. And it's important to note that one of the reasons that are listed in the statute for no tolling is the pendency of an arbitration case. You know, while an arbitration case that relates to the same subject matter is pending, statute of limitations is suspended or tolled under the statute, which means that the legislature knew that pendency of other cases in other places was a potential tolling device or tolling reason. And they specifically, the legislature in their wisdom, said by negative lack of inclusion that American Pipe class action tolling is not a grounds for tolling. I'd like to make one other point that would actually allow the Court to avoid this quandary altogether. I actually don't think it's a quandary. I think the statute is clear. But this whole issue only becomes relevant if you accept the notion that the causes of action here did not accrue until November 18th of 2009. That was the plaintiff's argument in the district court. Part of our motion for summary judgment, which Godfrey said he didn't need to reach because he found American Pipe tolling didn't help them in any event, is that the statute of limitations actually began to run in February of 2009. And under that scenario, they lose anyway. And the reason that we argued that, and I think this Court could easily find because it's supported by the record, that limitations began to run in February of 2009 is because, and I know this Court has been inundated with Stanford Ponzi scheme cases before, so I'm telling you nothing you don't already know, but on February 17th, 2009, the SEC shut down the Stanford Ponzi scheme in a public filing in the northern district of Texas that was as publicized as one can imagine. It's often been touted as the second largest Ponzi scheme in America after the Madoff case, and everybody knew about it. Each of these investors knew about it because their funds were immediately frozen. And we put in the summary judgment record reams of publicity that existed in February of 2009. Now, and we say that started the limitations period. And again, if we're right, this American Pipe tolling doesn't help them. In response to that in the district court, they did not dispute the public knowledge of the exposure of the Ponzi scheme. They did not dispute their knowledge that this had happened. Their only argument was that, well, we didn't know of Pershing's involvement. We knew there was a Ponzi scheme. We knew we'd lost our money. We knew our investments were frozen. We knew there was a fraud, but we didn't know of Pershing's particular involvement. The problem with that argument is that under Florida law, to start the statute of limitations on a fraud claim, even under the delayed discovery accrual rule, you don't have to know the identity of the defendant or the wrongdoer. You have to know simply that you were wronged and the circumstances suggest that some third party may have done you harm. And clearly they knew that. We've cited the cases in our brief that say specifically you do not need to know the identity of the wrongdoer. Second of all, in any event, in the SEC's receiver action to shut down the Ponzi scheme, there's a discussion on the face of the pleading about Pershing's involvement, not alleged, it's actual involvement, which they then sort of run with and say that's what creates the liability. But Pershing's involvement is on the face of the SEC's complaint, number one, and number two, their argument on the merits here is that Pershing is liable to them because Pershing vouched for these certificates of deposit. So on the merits part of their argument, they say, you know, we bought these things because Pershing was involved. On the statute of limitations, they say when it was exposed in February of 2009, we didn't know anything about Pershing. I mean, that obviously, that can't work. And so one way to easily resolve this case that is consistent with the record is to hold on the point that admittedly Judge Godbee did not reach that the causes of action here accrued in February of 2009, in which case all of this goes away. The other point quickly I'd like to make is that, as the Court knows, there are five or six appeals that were consolidated here. The Weatherly case, the main case, the complaint was filed in 2013, so it has its own sort of timing issue. The other cases weren't filed until January and February of 2015. So even if you were to adopt their view of class action tolling and save Weatherly, you still have to look at the other cases. And the only way those other cases get saved is if you give American pipe tolling for the period that they claim and then add another seven months and 14 days of tolling based on Judge Godbee's stay of the Turk action while the Roland v. Garcia case was pending in this Court, which had to do with whether SLUSA applied. And you simply cannot, as Judge Godbee found, get to any SLUSA tolling period here because Judge Godbee, all he did in the orders that they rely on is he stayed the Turk action while the SLUSA appeal was pending in this Court. He did not order, nor I'm not sure how he could have, order that no plaintiff who is yet to file a lawsuit can file a lawsuit. There was no such order. And so the stay of the Turk case as a Turk case provides no tolling period. One other quick point. If you get to finding that there's any class action tolling, there is an issue, I guess it's an issue, they try to raise in their brief on how long that tolling period is. In the district court, they unequivocally took the position that any class action tolling here started on November 18th of 2009 and ended on June 25th of 2010 when the class definition in the Turk case was narrowed to exclude them. There are four or five places in their brief where they make that point explicitly. In particular, I would point you to page 6367 of the record where they very helpfully produce a chart for the district court that lists the various time periods, and the chart unequivocally says June 25, 2010, American pipe tolling ceases and they go on to, in the description of their chart, say it ceases because the definition had been narrowed to exclude them. They now want to argue something completely different in this court and say that actually tolling extended beyond that. They can't do that, number one. And number two, they're just wrong on the facts. For the reasons we set forth in our brief, in June of 2010, the class action definition was in fact narrowed to exclude them. Judge Godby so found. Judge Godby obviously is presiding over both the Weatherly case and the Turk case. When he ultimately denied class certification in Turk this year, he made very clear that the class definition in Turk had been changed to exclude these folks here because they don't have brokerage accounts introduced to Pershing. Thank you, Your Honor. Your Honors, I don't want to spend my few minutes here to debate questions the district court did not even reach. Many of these questions are fact bound. I assume this Court is not going to delve into them on appeal. I would like to respond to some of the issues the district court did reach. First of all, he says there's no circuit split on the Erie question because we cite a case called Adams from the Eighth Circuit. That's just incorrect. If you look at our brief at pages 34 and 35, the Eighth Circuit, a case we cite is not Adams. It's called N. Ray General American Life Insurance Company. We pointed out in our reply brief that we did not cite Adams. I don't know why they keep talking about Adams. I agree with him. There is no holding in Adams, but there is a holding in General American Life Insurance, which is why we cited that case and not the Adams case. Number two, I didn't mean to imply any derogation of statutory law in my previous comments. I was a law clerk to Justice Scalia. Textualism is very near and dear to my heart. I agree the statute is quite clear, and maybe if I were on the Florida Supreme Court, I would have rejected this decades of equitable tolling that they have recognized outside the statute. But I'm not on the Florida Supreme Court, and the job here is to respect what the Florida Supreme Court does. They're not required to be textualists. As much as I am sympathetic to that view, no one says every judge has to be a textualist. They're entitled to their own view. Not only am I a good textualist, but I'm a good Federalist, and being a good Federalist means respecting state Supreme Courts when they say things about Florida state law. What would be inconsistent with Florida law if this court were to hold there's no equitable tolling in Florida? I'll tell you what would be inconsistent. Number one, there's the Florida Supreme Court's decision in Matt Chulas, which says we recognize equitable tolling. They say it's just about administrative proceedings. That's not how that opinion reads. The opinion says we're going to extend equitable tolling to administrative proceedings because administrative proceedings are like a statute of limitations where we recognize equitable tolling. And this is the textual point that I'm hung up on, and I'm hoping you can unpack it. So it says this is the statute, the subsection 2, so after the numeracy. A disability or other reason, which you might think would include things like equitable tolling, does not toll the money of any statute of limitations. So what is the best case where the Florida Supreme Court has said as applied to the statute of limitations? We've talked about Engle. I assume Engle's a great case for you, but is there another one beyond Engle where they apply equitable tolling to a state statute as opposed to administrative, contractual, or other provision? Florida Supreme Court, I don't believe so. But, again, there's two dozen intermediate courts of appeals in Florida that have merrily applied equitable tolling in the last 30 years. But equitable tolling to a statute. To a statute, correct. And I know a bunch of those are Engle cases. Is it fair to call Gaff an Engle case? Gaff is an Engle case, except it wasn't a plaintiff that was decertified. It was a plaintiff that opted out just like we did before the certification decision. But the 23 cases in the lower Federal or the lower Florida courts on equitable tolling, those are not class action tolling cases. I'm referring to cases that are not class action tolling. There's two dozen of those, too. If you had your law clerks just do a Westlaw search for equitable tolling, 23 cases will pop up where they're merrily applying. Sometimes they say the facts don't support equitable tolling, but they don't seem to be under the impression that there is no equitable tolling. They all seem to be under the impression, just like the practitioners from the Florida Bar Journal, equitable tolling is alive and well in Florida. Again, it's not the most textless way to do things, but they're not required to do it that way. I've got ten seconds left, so I'll probably just rest on that. Thank you very much. Roberts. Thanks to you both. We have your case.